IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PRECISION IBC, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No.:  CV-15-637-C |
| | * | |
| 1019 GROUP, LLC DBA PHOENIX | * | |
| CHEMICAL TECHNOLOGIES, | * | |
| LLC | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM ORDER AND OPINION

This matter is before the Court on Plaintiff Precision IBC, Inc.'s ("Precision") Motion for Summary Judgment (Doc. 45) and Motion to Enforce Court's December 1, 2016 Order and/or For Sanctions (Doc. 47).  The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court.  (Doc. 32 ("In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.")).

Upon consideration of the motions of Plaintiff Precision (Docs. 45 & 47), the pleadings, the applicable law, and having noted no opposition from Defendant Phoenix Chemical Technologies, LLC, for the reasons explained below, the Court finds that Plaintiff Precision's Motion for Summary Judgment (Doc. 45) and Motion to Enforce Court's December 1, 2016 Order and/or For Sanctions (Doc. 47) are due to be **GRANTED**.

## FINDINGS OF FACT

Precision's evidentiary submission establishes the following facts:

**A.     Precision**

1.     Precision supplies intermediate bulk containers ("IBCs" or "tanks") for use in the shipment and/or storage of various products, including, in some instances, hazardous chemicals.  (Doc. 45-1, Decl. of Neil Christopher at ¶¶ 2 and 5).  Precision's business is mostly in the form of tank rentals as opposed to sales.  Precision supplies both stainless steel and polyethylene (plastic) tanks as well as related equipment to its customers.  (Doc. 45-1 at ¶ 2).  When Precision leases equipment to a customer, the customer is asked to execute a written rental agreement that sets forth the parties' various obligations and the remedies in the event of a breach of those obligations.  (Doc. 45-1 at ¶ 2).

**B.     The Rental Agreement and Phoenix's Default**

2.     On or about November 28, 2012, Phoenix executed a Rental Agreement pursuant to which Phoenix leased thirty (30) 250-gallon stainless steel tanks and thirty (30) access stands.  (Doc. 45-2, "Rental Agreement".)

3.     Pursuant to the Rental Agreement, Phoenix was required to make timely rental payments to Precision at its principal office in Fairhope, Alabama, and the failure to do so is defined as a default under the Rental Agreement.  (Doc. 45-1 at ¶ 5; Doc. 45-2 at ¶ 17).  Further, the Rental Agreement obligates Phoenix to maintain and, at the end of the rental term, return Precision's tanks in clean and good condition to Precision's Fairhope office:

### Rental Tank Return Policy

Returned tanks must be free of all product. Tanks must be returned triple-rinsed, drip-dried, and free and clean of product and odor, both internally and externally, in the same clean condition as originally received. Tanks must be complete with lid, valve, caps, plugs, etc.
. . . .

**9.   RETURN OF EQUIPMENT.**   Upon termination of this Agreement, Lessee will return the Equipment to Lessor, freight prepaid, to its address in Fairhope, Alabama, designated herein, or to such other location designated by Lessor, in the same condition and repair as when initially rented hereunder, ordinary wear and tear excepted.

. . . .

**11.   CHEMICALS COMPATIBLE**.  Lessee will not deposit and will not allow to be deposited any product that is not chemically compatible with the tanks' material of construction.  Lessee will be solely responsible for determining whether a product is chemically compatible with any tank prior to depositing such product into the tank or allowing such product to be deposited in the tank.  *If any product deposited or allowed to be deposited by Lessee into any of Lessor's tanks causes irreparable damage to the tank in any respect, including, without limitation, pits or stress fractures, the Lessee will pay the Replacement Cost of the Equipment to Lessor as provided in Section 1[2] ("Risk of Loss")*.

**12.   RISK OF LOSS.**  Lessee assumes all risk of damage to or loss, theft or destruction of the Equipment from the time Lessor delivers the Equipment to the carrier for shipment to Lessee through the time Lessee returns the Equipment to Lessor's possession . . .. *In the event of irreparable damage to, or loss, theft or destruction of any of the Equipment, Lessee will pay to Lessor, as liquidated damages and not as a penalty, the amount identified as the "Replacement Cost" of such Equipment on the Equipment List.*

(Doc. 45-2 at §§ 9, 11, 12) (bold italics emphasis in §§ 11-12 added).

4.     Precision's customers use Precision's tanks to ship and store various products, including hazardous chemicals.  (Doc. 45-1 at ¶ 5).  If the interior of the tank is corroded, pitted, or experiencing exfoliation, the tank interior is susceptible to holes and leaks and the tank may not satisfy the testing requirements of the United Nations and Department of Transportation ("UN/DOT") for tanks used in shipment.  (Doc. 45-1 at ¶ 5).  Accordingly, if a customer returns a tank that is damaged by corrosion, exfoliation, and/or pitting, the tank has to be removed from Precision's rental fleet and cannot be leased to another customer.   (Doc. 45-1 at ¶ 5).  Precision's Rental Agreement requires that the customer assume liability for tanks damaged by chemical attack resulting from the use of incompatible materials.  (Doc. 45-2 at §§ 11-12).

5.     The November 28, 2012 Rental Agreement established the replacement cost value of the equipment leased to Phoenix as $2,792.00 p/tank for the 250 gallon stainless steel tanks and $551.00 p/stand for the access stands.  (Doc. 45-2 at 1).

6.     Following the November 28, 2012 Rental Agreement, Phoenix executed equipment rental addendums pursuant to which Phoenix leased additional equipment from Precision, including both stainless steel and stackable polyethylene tanks.  (Doc. 45-1 at ¶ 4; Doc. 45-3).  Phoenix's lease of additional equipment was subject to the same terms and conditions set forth in the November 28, 2012 Rental Agreement.  (Doc. 45-1 at ¶ 4; Doc. 45-3).   On March 8, 2013, Phoenix executed an Equipment Rental Addendum Agreement pursuant to which Phoenix leased six (6) stackable polyethylene tanks.  (Doc. 45-1 at ¶ 4; Doc. 45-3).  The Rental Addendum established the replacement cost value of the equipment as $918.00 p/tank.  (Doc. 45-1 at ¶ 4; Doc. 45-3).

7.     The failure to comply with the provisions of the Rental Agreement requiring timely payment of monthly rental fees and any other provisions under the Rental Agreement, including the rental tank return policy and risk of loss provisions, are considered a default under the Rental Agreement.[1]  (Doc. 45-2 at § 17).

8.     The Rental Agreement provides several remedies to Precision in the event of default, including taking legal action against Phoenix to recover damages.  (Doc. 45-2 at § 18).

9.     The Rental Agreement requires Phoenix to indemnify Precision against all expenses, including attorney's fees, incurred as a result of Phoenix's default under the

---

[1]      The Rental Agreement provides that Phoenix's failure to comply with any provision of the Rental Agreement that continues for five (5) days after being provided written notice of a breach constitutes a default under the Rental Agreement.   (Doc. 45-1 at § 17).   Precision notified Phoenix on numerous occasions of its breach of the Rental Agreement by (i) failing to make timely rental payments, (ii) failing to return the tanks cleaned and in good condition, and (iii) refusing to pay the replacement cost value of the equipment that was lost or irreparably damaged due to Phoenix's placement of incompatible materials in the tanks.  (Doc. 45-1 at ¶¶ 6-8).

Rental Agreement or to enforce Precision's rights or remedies under the Rental Agreement.  (Doc. 45-2 at §§ 20, 22(e)).

10.      Phoenix stopped paying its monthly rental payments in approximately January of 2015, and despite numerous requests for payment, continued to be in default on its monthly payments.  (Doc. 45-1 at ¶ 6).  According to the damages calculation prepared by Neil Christopher, the amount Phoenix currently owes to Precision in unpaid rental fees, excluding interest, is $63,703.66.[2]  (Doc. 45-1 at ¶ 10).

11.      On or about September 9, 2015, Phoenix returned forty-eight (48) of Precision's 250-gallon stainless steel tanks.  (Doc. 45-1 at ¶ 6).  Precision has presented evidence that none of the tanks were properly cleaned and, moreover, twenty-two (22) of the tanks were corroded, pitted, experiencing exfoliation or were otherwise damaged beyond repair.  (Doc. 45-1 at ¶ 6; Doc. 45-5).  In addition to not being cleaned, most of the tanks still had Phoenix's chemical labels affixed.  Several of the chemical labels indicated that the chemicals Phoenix had placed in the tanks were corrosive.  (Doc. 45-1 at ¶ 6; Doc. 45-4).  An itemized list of the 22 tanks that were damaged and a description of the damage was provided to Phoenix on or about September 15, 2015.[3]  (Doc. 45-1 at ¶ 6; Doc. 45-5).

12.      Pursuant to the terms of the Rental Agreement, Phoenix is required to pay the replacement cost of each damaged tank ($2,792.00 p/tank).  (Doc. 45-2 at § 12).

C.      **Filing of the Lawsuit and Precision's Damages**

---

[2]      The Rental Agreement requires Phoenix to pay interest in the amount of 1% per month on any payments not received within twenty (20) days of the invoice.  (Doc. 45-2 at § 16).

[3]      The damaged tank quote identifies twenty four (24) tanks as damaged beyond repair.  (Doc. 45-2).  Subsequently, it was determined that two (2) of the tanks that were stained but not experiencing exfoliation, pitting, or corrosion and could be restored to a condition where the tanks could be returned to the rental fleet.  (Doc. 45-1 at p. 3, n. 2).

13.     On December 16, 2015, Precision filed the instant lawsuit seeking unpaid rental monies plus interest as provided by the Rental Agreement, the replacement cost value of all damaged or lost equipment, and attorney's fees and expenses as provided by the Rental Agreement.  (Doc. 1).  Subsequent to the lawsuit, Precision discovered that in addition to the 22 stainless steel tanks that were returned damaged, Phoenix had lost or destroyed three (3) additional 250 gallon stainless steel tanks, six (6) polyethylene tanks, and one (1) access stand.  (Doc. 9).  On February 25, 2016, Precision filed its Amended Complaint also seeking to recover the replacement cost of the additional equipment Phoenix lost.  (Doc. 9).

14.     Precision's damages for unpaid rental fees plus interest and the replacement value of its damaged equipment total $150,931.66.  (Doc. 45-1 at ¶ 10).

## STANDARD OF REVIEW

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)).  If the moving party bears the burden of proof at trial, it must establish all essential elements of the claim or defense in order to obtain summary judgment.  *See, e.g., United States v. Four Parcels of Real Prop. in Green and Tuscaloosa Cty.*, 941 F.2d 1428, 1438 (11th Cir. 1991).  If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party "come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* at 1438 (internal quotations and citations omitted); *see also* FED. R. CIV. P. 56(e).  "There is no burden upon the district court to distill every potential argument that could be made

based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint [or answer] but not relied upon in summary judgment are deemed abandoned."  *Resolution Tr. Corp. v. Dunmar Corp*, 43 F.3d 587, 599 (11th Cir. 1995) (internal citation and citations omitted).

## CONCLUSIONS OF LAW

### A.     Precision's motion is unopposed.

As stated, Precision filed its motion for summary judgment on December 27, 2016.  (Doc. 45).   On December 29, 2016, the Court entered a briefing schedule instructing that Phoenix's opposition to summary judgment was due on or before January 20, 2017.  (Doc. 46).   Phoenix filed no opposition and, moreover, during a hearing held on January 31, 2017, Phoenix's counsel advised that Phoenix did not oppose Precision's motion or the entry of an order granting summary judgment in Precision's favor.   Phoenix's failure to file an opposition to Precision's motion, which identified the material facts Precision contends are undisputed, is an admission that no material factual dispute exists.  S.D. Ala. Civil L.R. 56(d).

### B.     Precision's breach-of-contract claim.

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages."  *Ala. Mun. Ins. Corp. v. Alliant Ins. Servs., Inc.*, 2012 WL 39950, *4 (M.D. Ala. Jan. 9, 2012) (*quoting Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)).

Precision has established each element of its breach-of-contract claim.  First, it is undisputed that the Rental Agreement is a valid contract binding between the parties.   Phoenix admitted this in its supplemental responses to Precision's requests for admissions.  (Doc. 45-7).  Second, Precision has established its performance under the

Rental Agreement.   According to the Affidavit of Mr. Christopher, the equipment Precision leased to Phoenix was accepted and used by Phoenix for a period of years, and at no time did Phoenix report any issue or defect with the equipment.  (Doc. 45-1 at ¶ 7).  Rather, this allegation was not made until Precision demanded payment of its unpaid rental fees.  (Doc.  45-1 at ¶ 7).  Phoenix has not disputed Precision's evidence demonstrating Precision's performance.   Third, Precision has demonstrated Phoenix's non-performance under the Rental Agreement inasmuch as it is undisputed that Phoenix failed to pay rental fees owed under the Rental Agreement.   Additionally, Phoenix has not disputed Precision's evidence establishing that Phoenix returned equipment to Precision that was badly damaged.   Finally, Precision has established damages in the form of unpaid rental fees, interest owed under the Rental Agreement, and the loss of equipment.  (Doc. 45-1 at ¶ 10).

In sum, Precision satisfied its initial burden as the movant to establish undisputed material facts proving Precision's claim for breach of the Rental Agreement. Phoenix has conceded that there is no genuine factual issue concerning Precision's claim.  Precision, therefore, is entitled to summary judgment in its favor and an award of monetary damages totaling $150,931.66, plus, and upon proper proof, its reasonable attorneys' fees and expenses.

**C.  Precision's Motion to Enforce December 1, 2016 Order And/Or For Sanctions**

On December 1, 2016, the Court entered an Order instructing Phoenix to pay Precision's attorney's fees ($2,080.50) incurred in connection with Precision's motion to compel Phoenix's discovery responses.  (Doc. 44).  On January 10, 2017, Precision filed a motion seeking to enforce the Court's Order because Phoenix had failed to pay the amount owed under the Order.  (Doc. 47).  During the hearing held on January 31, 2017,

counsel for Phoenix acknowledged that Phoenix owed the $2,080.50 to Precision but that Phoenix had not paid this amount nor made arrangements to pay this amount to Precision.  Therefore, Phoenix also has conceded its failure to comply with the Court's fee Order.

## CONCLUSION

Based on the foregoing, the Court finds that Precision's motion for summary judgment is supported by sufficient evidence establishing that there is no genuine issue of material fact concerning Precision's claim for breach of the Equipment Rental Agreement or the amount of Precision's contractual damages, excluding attorney's fees and expenses.[4]  Since Phoenix filed no opposition to Precision's motion for summary judgment and has now consented to the entry of summary judgment in Precision's favor, the Court finds that Precision's motion for summary judgment is due to be and hereby is **GRANTED**.  Further, the Court finds that Precision's motion seeking to enforce the Court's December 1, 2016 Order is due to be and hereby is **GRANTED**.  The attorney's fees previously awarded to Precision will be included in the final judgment entered against Phoenix.

In accordance with this Order and Rule 58, FED. R. CIV. P., the Court will enter a final judgment awarding damages to Precision in the amount of $150,931.66 plus Precision's reasonable attorney's fees and expenses in an amount to be established by Precision's counsel.  As stated above, the judgment will include the fee award in the

---

[4]      At the time Precision's motion for summary judgment was filed, Precision's attorney's fees and expenses were still accruing.  The Court will allow Precision to submit the final amount of its attorney's fees and expenses prior to entering a final judgment.

amount of $2,080.50 previously awarded to Precision.

**DONE** and **ORDERED** this the 28th day of March 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**